THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
CALVIN RICHARD HAAG, DEFENDANT AND APPELLANT.

No. 13948.
May 10, 1978.
578 P.2d 740.

H. James Oleson (argued), Kalispell, for defendant and appellant.

Mike Greely, Atty. Gen., Helena, Patrick Springer, County Atty. (argued), Kalispell, Stewart A. Pearce, II, Deputy Atty. Gen. (argued), Kalispell, for plaintiff and respondent.

MR. CHIEF JUSTICE SHEA delivered the opinion of the Court.

Defendant appeals from convictions in the District Court, Flathead County, of felony common scheme issuance of bad checks and felony bail-jumping.

Prior to July 9, 1976, defendant's ex-wife obtained public assistance through the Flathead County Department of Public Welfare as agent for the Montana Department of Revenue (Department). On July 9, 1976, at the insistence of the Department, defendant wrote a $225 check to the Department for the payment of past child support. This check was thereafter returned by the drawee bank due to nonsufficient funds (NSF). Defendant later wrote checks to a Sykes Grocery Market for $5, dated September 30, 1976, and to another local store for $10, dated October 21, 1976; both of these checks were also returned NSF. Defendant's fourth bad check, dated December 24, 1976, was written to K-Mart for $42.51 and was returned "account closed".

Defendant was arrested and charged by the Flathead County attorney with felony issuance of bad checks. Defendant's initial appearance was in justice court, Flathead County, where the justice of the peace scheduled a preliminary examination, and released defendant on his own recognizance until that time. Defendant failed to appear for his scheduled March 18, 1977 preliminary examination.

On March 22, 1977, after having received leave to file its Information direct, the county attorney filed a two-count Information in the District Court, Flathead County, charging defendant with felony common scheme issuance of bad checks and felony bail-jumping.

Defendant appeared in District Court on March 24, 1977, and entered a plea of not guilty to the charges. At the arraignment, defendant's counsel advised the State that the names of the State's witnesses were not listed on the Information. The deputy county attorney told the court the omission was unintentional and he would provide the defense with a list of all the State's witnesses and would amend the Information to include those witnesses. The case was

then scheduled for trial on April 11, 1977, on which date it was continued to April 18, 1977, on which date it was continued to April 25, 1977. On Arpil 22, 1977, the State amended its Information to include a list of the State's witnesses and mailed a copy of the amendment to counsel for defendant. Defense counsel alleged that he did not receive the amendment, containing the State's initial list of witnesses, until April 25, 1977, the date the trial commenced. After the jury was impaneled, the court granted the State's motion to add another witness to its list of witnesses. Defendant objected to the filing of both the initial list of witnesses and the additional witness, but in neither instance did defendant move for a continuance of the trial.

After trial, the jury found defendant guilty of felony common scheme issuance of bad checks and felony bail-jumping. The District Court deferred imposition of sentencing for two years and, among the conditions of defendant's probation, ordered defendant to serve 30 days in the Flathead County jail on each count, to obtain psychiatric counseling, and to make full restitution on all the bad checks.

In his appeal from the convictions, defendant raises the following issues:

1. Did the State on the day of trial make a sufficient showing of "good cause" under section 95-1803(a)(1), R.C.M. 1947, to add certain State's witnesses who had not been listed on the Information?

2. Was defendant prosecuted on the bad check charge in such a discriminatory manner as to be denied the constitutional guarantee of equal protection of the laws?

3. Was defendant imprisoned for a debt, contrary to Article II, Section 27, 1972 Montana Constitution?

4. Did defendant's issuance of a NSF check to pay back child support, a past debt, fit within the section 94-6-309, R.C.M. 1947, definition of the issuing a bad check offense?

5. Did the State fail to prove that defendant had received property, labor, or services for his $5 check to Sykes Grocery, and thereby fail to prove an essential element of the offense?

6. Were facts which tended to show that defendant had failed to pay child suport admissible in proving the elements of one of the four bad check offenses?

7. Were the facts provent at trial sufficient to convict defendant of felony common scheme issuance of bad checks?

8. Does the cumulative error doctrine require reversal of defendant's bad check conviction?

9. Was there substantial evidence to support the jury's finding that defendant was guilty of bail-jumping?

■ The first specification of error raised by defendant is dispositive of the bad check issue. The charges against defendant were filed in a two count Information in District Court. No witnesses for the State were listed on the Information despite the command of section 95-1503(d), R.C.M.1947, which states:

"If the charge is by information or indictment, it shall include endorsed thereon, the names of the witnesses for the state, if known."

Section 95-1803(a)(1), R.C.M.1947, the statute which governed whether the State could add the witnesses, reiterated the section 95-1503(d) command that the state furnish the defendant with a list of witnesses at the time of arraignment, and then provided:

"* * * The prosecution may, any time after arraignment, add to the list the names of any additional witnesses, upon a showing of good cause. * * *"

The legality of allowing the State to submit its original list of witnesses on the day of trial therefore depends entirely upon whether the "good cause" requirement of section 95-1803(a)(1), was met.

In interpreting section 95-1803(a)(1), this Court has stated:

" ' "Good cause" has been defined as "substantial reason", one that affords a legal excuse.'

"The court should first determine whether the need for the additional witnesses and the reason for their not being disclosed earlier is a 'substantial reason'. It should then determine whether there is

prejudice based on surprise and whether this surprise can be over-come by the granting of a continuance. If the surprise element can be overcome by a continuance, then the witnesses should be en-dorsed and the continuance granted. The spirit and intent of the law is that names and addresses of potential witnesses should be disclosed as soon as they are known." *State v. Klein* (1976), 169 Mont. 350, 354, 547 P.2d 75, 78, quoting from *State v. Rozzell* (1971), 157 Mont. 443, 450, 486 P.2d 877.

The threshold requirement of section 95-1803(a)(1) was not met by the county attorney, and the court erred in allowing the State to add its list of witnesses. The "need for the additional witnesses" was obviously great. Without the witnesses, the State had no one to testify in its behalf, and consequently, had no case. The reason for the witnesses not being disclosed prior to trial, however, was hard-ly a "substantial reason" which "affords a legal excuse". In short, the State failed to meet the "good cause" requirement which would have allowed them to add witnesses under section 95-1803(a)(1).

At defendant's arraignment on March 24, 1977, defendant's counsel informed the deputy county attorney that the State's Infor-mation did not contain a list of State's witnesses. The deputy coun-ty attorney then informed the court he would "* * * provide the defense with a full copy of all our witnesses and will file an amend-ment to the Information listing them." The deputy county attorney failed to provide the court or defendant with a list of witnesses either by April 11, 1977, the date on which trial was originally set, or by April 18, 1977, the date to which the trial was first con-tinued. Defendant did not receive the State's list of witnesses until April 25, 1977, the date on which trial finally commenced. The deputy county attorney gave the following statement as the cause for the State's failure to list its witnesses at defendant's arraign-ment or at a reasonable time thereafter:

"* * * the technical * * * [exclusion of the witness names from] the information was an oversight on my part and nobody is respon-sible for that but me * * *."

Failure of the State to list witnesses due to the continued

oversight of the deputy county attorney is not delay due to "good cause" as required by section 95-1803(a)(1). Delay due to culpable inadvertence is not a substantial reason which affords a legal excuse. Lack of knowledge by the State as to the names of witnesses or potential relevancy of witnesses' testimony provides a legal excuse for not listing the witnesses' names on the Information. See, e.g., *State ex rel. Nelson v. District Court* (1977), 173 Mont. 221, 566 P.2d 1382. Continued failure to file names of known witnesses, however, is not excusable.

■ The State claims that despite the nonfeasance of the deputy county attorney in failing to comply with section 95-1503(d), defendant had a copy of each of the alleged bad checks and therefore knew who would testify for the State. Defendant correctly points out, however, that the checks themselves were written to business establishments and not to individuals. The checks in no way indicate which employee of the businesses would testify for the State. The facts in this case are therefore distinguishable from those in *State v. Campbell* (1972), 160 Mont. 111, 500 P.2d 801 wherein this Court allowed the State on the first day of trial to add to its list of witnesses the victim of the alleged assault. In *Campbell*, the defendant had actual notice of the victim of the crime and could well expect that the victim would testify for the State. Although in this case defendant through investigative work could likely have discovered which employee of each payee store would testify, this was not defendant's burden. The burden, rather, was on the State to list its witnesses; this it failed to do.

The State cites *State v. McDonald* (1915), 51 Mont. 1, 4, 149 P.279, for the proposition that a defendant has the burden to show he is unable to meet the testimony of the additional witnesses, even when the county attorney intentionally fails to perform his duties. The Court in *McDonald*, however, was interpreting a 1907 Montana statute which contained "* * * no provision requiring the names of witnesses subsequently discovered, either before the opening of trial or during its progress, to be endorsed * * *." *McDonald*, 51 Mont. 4, 149 P.280. Section 95-1803, R.C.M.1947, does contain a provision for endorsement of witnesses and a pro-

cedure to follow to add witnesses. "Good cause" must be shown by the State and was not shown in this case.

The State also argues that the bad check conviction should be affirmed because defendant failed to move for a continuance of the trial date to enable him to investigate and prepare for the testimony of the new witnesses. Defendant counters that he did not have a burden to ask for another continuance because the trial had been continued twice before, the defense witnesses had already twice previously adjusted their schedules to be at defendant's trial, and the State, through its negligence, had failed to be properly prepared for trial.

■ Section 95-1708, R.C.M.1947, provides procedures by which a defendant may move for a continuance. Once the State, after arraignment, shows "good cause" under section 95-1803, R.C.M.1947, to add witnesses, the defendant has the burden to ask for a continuance or he is estopped on appeal from claiming surprise or prejudice from the additional witnesses' testimony. In all cases, however, the State must show "good cause" to add witnesses; absent such a showing of good cause, the State is precluded from adding witnesses under section 95-1803 and defendant's request for a continuance never comes into issue.

"* * * If good cause to list the additional witnesses is shown * * * *and* if any prejudice caused by defendant's surprise can be overcome by the granting of a continuance, the additional witnesses should be listed. * * *" (Emphasis added.) *State ex rel. Nelson v. District Court*, 566 P.2d 1388.

In this case, because the State could not show good cause to add the witnesses, defendant had no burden to move for a continuance of the trial date.

■ Since the State did not show "good cause" to add the witnesses, the requirements of section 95-1803(a)(1) were not met. The District Court therefore erred in granting the State's motion to add witnesses on the bad check charge. Without the testimony of the witnesses on the bad check charge, the evidence is wholly insufficient to support the conviction, and this conviction is reversed

and dismissed. See, *State v. Langan* (1968), 151 Mont. 558, 445 P.2d 565.

We carefully limit the holding of this case to its facts. If a county attorney fails to list known witnesses on an Information, we cannot say he necessarily lacks good cause to add the witnesses, if he does so promptly and in good faith after the omission is brought to his attention. Nor do we hold that a defendant who is aware that there are no witnesses listed on an Information may remain silent and fail to requestion a list of witnesses, thereby hoping to cultivate reversible error through the county attorney's unnoticed inadvertence. In this case, however, there was a failure by the State to list witnesses on the Information and a continued failure by the State to provide a list of witnesses even after a request by defendant to do so and a promise by the deputy county attorney to the court that he would do so.

The first issue is dispositive of defendant's appeal from the bad check conviction. Therefore, we need not discuss defendant's specifications of error two through eight.

Defendant's conviction of felony bail-jumping under section 95-7-308, R.C.M.1947, is for an offense separate and distinct from the bad check conviction and is not reversed due to the State's failure to list the bad check witnesses on the Information. The only witness who testified for the State on this charge was Mary K. Reidel, the justice of the peace before whom defendant failed to appear for his preliminary examination on the felony bad check charge. Defendant had previously been before this justice of the peace for an initial appearance on the same bad check charge and knew from the Information filed in District Court that the bail-jumping charge was for failure to appear for a "* * * Preliminary Hearing * * * scheduled for March 18, 1977, at 2:00 o'clock P.M. in the Justice Court of Hon. Mary K. Reidel * * *." Defendant's counsel at trial stated that "The only witnesses that I assumd that the State was going to call was Mary Reidel." Defendant was on notice Mary Reidel woul testify on the bail-jumping charge, and allowing her to testify at trial was not prejudicial error. See, *State v. Campbell*, supra.

Defendant contends that there was insufficient evidence to sustain the bail-jumping conviction. Defendant states that he did attempt to travel to Kalispell for the hearing, but, due to circumstances beyond his control, was unable to arrange transportation. Defendant also stated that his doctor advised him to remain in bed on the day of the preliminary examination. These factors, defendant contends, negated criminal intent.

Other evidence at trial, however, showed that defendant was released on his own recognizance by the justice of the peace upon the condition that he would appear for a March 18, 1977 preliminary hearing. Defendant's sister testified that defendant could have ridden to Kalispell with his brother-in-law on either March 16 or 17. Defendant's doctor testified that he would not have advised defendant to remain in bed, but would have advised defendant to attend the preliminary hearing if defendant had been candid with him and informed him of the scheduled hearing. The issue of defendant's intent to miss the preliminary hearing was a factual question for the jurors, and we will not disturb their finding in the appeal. *State v. Pascgo* (1977), 173 Mont. 121, 566 P.2d 802.

By affirming the bail-jumping conviction, this Court in no way approves consolidating in a single trial separate charges against a defendant for violating a specific criminal law and for bail-jumping due to his failure to appear for a court proceeding related to the crime with which he is being tried. In certain cases jurors might improperly, though perhaps understandably, conclude that a defendant must necessarily be guilty of the crime charged or he would not have jumped bail. The facts of this case, however do require reversal on this basis. Furthermore, defendant neither objected to this procedure at trial nor raised the issue on appeal.

The felony bad check conviction is reversed. The felony bail-jumping conviction is affirmed. the case is remanded to the District Court for resentencing.

The judgment is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

MR. CHIEF JUSTICE HASWELL AND JUSTICES DALY and HARRISON concur.

MR. JUSTICE SHEEHY did not participate in this case.